UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID G. MYERS, | |
| Plaintiff, | CASE NO. 10-cv-05864 RJB |
| v. | REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | Noting Date: September 16, 2011 |
| Defendant. | |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (<u>See</u> ECF Nos. 13, 14 and 15).

After reviewing the relevant record, the Court concludes that the Administrative Law Judge failed to address the opinion of plaintiff's treating orthopedic surgeon, Dr. Gordon Cromwell, M.D. Since Dr. Cromwell was a treating physician who opined that plaintiff permanently suffered from limitations in his ability to function in the work place

that were not included in the ALJ's determination regarding plaintiff's residual functional capacity, the ALJ's lack of consideration of Dr. Cromwell's opinion cannot be considered harmless. Therefore, this Court recommends that this matter be reversed and remanded to the Administration for further consideration.

## BACKGROUND

Plaintiff, David G. Myers, was born in December, 1964 and was thirty-seven years old on his alleged disability onset date (Tr. 373). He alleges disability beginning on June 1, 2002 (Tr. 92) due to fibromyalgia, osteonecrosis, irritable bowel syndrome, chronic pain and fatigue, memory loss and confusion (Tr. 145, 602). A hearing was conducted on September 11, 2009, before Administrative Law Judge Laura Valente (Tr. 87, 132) (hereinafter referred to as "the ALJ"). A second hearing was held on February 8, 2010 (Tr. 28-86). On March 4, 2010, the ALJ issued a decision finding that Plaintiff was not disabled (Tr. 9-21). Although the ALJ found that the claimant had not been engaged in substantial gainful activity (Tr. 11) and that the claimant had severe impairments as a result of hip arthroplasty, obstructive sleep apnea, and fibromyalgia (Tr. 12), the ALJ found that the claimant had residual functional capacity to perform light work as defined in 20 CFR 404.1570(B), except that he could occasionally crawl, kneel, and climb ladders, ropes and scaffolds (Tr. 15). The ALJ concluded that claimant was able to perform past relevant work including work as a desk stop support/user support analyst, a network administration/network toll operator, or embroidery/sewing machine operator (Tr. 19). The ALJ concluded that there were jobs that existed in significant numbers in

the national economy that claimant could have performed (Tr. 20), and therefore, claimant was not under a disability, as defined in Social Security Act (Tr. 20).

## PROCEDURAL HISTORY

Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on September 23, 2010 (Tr. 1-5), making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Plaintiff timely filed this appeal.

Plaintiff filed a complaint seeking review of the ALJ's written decision in this Court (ECF No. 2). In his Opening Brief, plaintiff contends the ALJ: (1) erred when she failed to address the opinion of treating physician Dr. Gordon N. Cromwell, M.D.; (2) failed to evaluate properly plaintiff's mental impairment; (3) failed to consider plaintiff's fatigue caused by sleep apnea; and (4) failed to give clear and convincing reasons for rejecting plaintiff's testimony (see ECF No. 13, p. 1).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other

substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

However, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941(7th Cir. 2002) (*citing* SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943) (other citations omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision")

(citations omitted); Griemsmann v. Astrue, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *9, (W.D. Wash. 2009). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout v. Comm. Soc. Sec., 454 F.3d 1050, 1054-55 (9th Cir. 2006) (reviewing legal errors found to be harmless).

## DISCUSSION

1. <u>The ALJ erred when she failed to address the opinion of treating physician Dr. Gordon N. Cromwell, M.D.</u>

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." Edlund v. Massanari, 2001 Cal. Daily Op. Svs. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* Social Security Ruling "SSR" 96-2p, 1996 SSR LEXIS 9). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the opinion. SSR 96-2p, 1996 SSR LEXIS 9. Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

making findings." Reddick v. Chatter, 157 F3d 715, 725 (9th Cir. 1998) (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725.

In this case, Dr. Gordon N. Cromwell, Jr., M.D. ("Dr. Cromwell") is an orthopedic surgeon who treated plaintiff for a hip replacement on the left side in November of 2001 (Tr. 373). He suggested that plaintiff was restricted from getting down under desks and furniture to set up computer type equipment and should be restricted to desk activities (id.). In his opinion "these are permanent limitations" (id.). Although, as conceded by plaintiff, Dr. Cromwell opined that plaintiff was capable of working, he also opined that plaintiff suffered these specific functional limitations in his ability to work, such as an inability to crawl under desks (see id.; see also Opening Brief, ECF No. 13, p. 4). The ALJ did not even mention Dr. Cromwell's opinion in her decision. Instead, the ALJ concluded that plaintiff could perform light work and could occasionally crawl, kneel and climb ramps, ladders and scaffolds, without assessing limitations in plaintiff's ability to bend (Tr. 20). This is legal error.

Defendant argues that Dr. Cromwell's opinion was not probative to the period at issue because it was rendered before the claimed onset of disability. (ECF No. 14, pages 11 – 12). However, Dr. Cromwell's conclusion that these limitations were permanent limitations demonstrates that his opinion makes it more likely that plaintiff suffered these limitations during the period of disability. (Tr. 373). Therefore, Dr. Cromwell's opinion is relevant to the particular period of interest and it was incumbent on the ALJ to provide

specific reasons for rejecting this evidence, which she did not do. See Lester, 81 F.3d at 830-31.

According to the Ninth Circuit, when an ALJ fails to discuss or completely ignores a treating physician's medical opinion, the case should be remanded to the agency for proper consideration of the evidence. See Nguyen v. Chatter, 100 F.3d 1462, 1464 (9th Cir. 1996).

2. The ALJ evaluated properly plaintiff's mental impairments.

Step-two of the administration's evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an

individual[']s ability to work.'" Smolen, supra, 80 F.3d at 1290 (*quoting* Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* SSR 85-28)).

If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." Bowen, supra, 482 U.S. at 146. Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity, and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); Bowen, supra, 482 U.S. at 146; see also Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). It is the claimant's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'" Bowen, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing* Mathews v. Eldridge, 424 U.S. 319, 336 (1976)); see also McCullen v. Apfel, 2000 U.S. Dist. LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505, 404.1520).

The ALJ concluded that the plaintiff had severe impairments, including status-post total hip athroplasty, obstructive sleep apnea, and fibromyalgia, but did not find that plaintiff had any severe mental impairments (Tr. 12). She credited the testimony of Dr. Paul Michels, M.D. ("Dr. Michels"), an examining psychiatrist, who concluded on April 14, 2007 that plaintiff could manage a full range of mental work tasks (Tr. 12, 605-06). Dr. Michels diagnosed plaintiff with major depressive disorder, single episode, in partial remission, mild, and assigned a global assessment of functioning ("GAF") of 60 (Tr.

606). However, Dr. Michels did not opine that plaintiff suffered any functional limitations on his ability to work as a result of his depressive disorder. As conceded by plaintiff, Dr. Michels "opined that Plaintiff's focus and concentration seemed adequate, and pace and persistence were fair" (ECF No. 13, p. 6; see also Tr. 606). Plaintiff specifically concedes that Dr. Michels opined that plaintiff "could understand, remember and follow simple and even complex instructions" (id.). The Court also observes that plaintiff reported to Dr. Michels that his moods were "stable" (Tr. 603). Dr. Michels concluded that plaintiff's "depressive symptoms seem mostly in remission," and he did not "think that more aggressive mental health treatment would be necessary" (Tr. 606).

Similarly, the ALJ noted the observations of Dr. Amado Daylo, M.D. ("Dr. Daylo") that plaintiff's depressive symptoms had occurred "primarily after loss of his job in the context of multiple medical problems" and assigned plaintiff a GAF of 51-60 (Tr. 12, 690). The ALJ also relied on Dr. Daylo's notation regarding plaintiff's subjective report that his depressive symptoms could "last for as long as 2 weeks, but he is able to function" (Tr. 689).

Despite plaintiff's burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity, here, plaintiff has not directed the Court to an opinion by any treating or examining physician or psychologist that plaintiff's mental impairments caused more than a minimal effect on his ability to conduct basic work activities. See 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); Bowen, supra, 482 U.S. at 146. Although plaintiff contends that Dr. Enayat Niakan, M.D. ("Dr. Niakan") opined

regarding the cause of plaintiff's memory defect, Dr. Niakan actually opined that plaintiff had a self-reported history of a short-term memory defect, while Dr. Niakan's mental status examination reflected that plaintiff's memory was "intact" (Tr. 435-36). Dr. Niakan opined specifically that plaintiff's mental status examination results were "completely normal" (Tr. 436).

Similarly, after plaintiff's initial hearing, as discussed by the ALJ, plaintiff was examined by psychologist Dr. David M. Dixon, Ph.D. ("Dr. Dixon") on October 29, 2009 (Tr. 819-27). Dr. Dixon estimated that plaintiff's intellectual functioning was "in the high average to superior range based upon sentence structure, fund of knowledge, educational history and vocabulary" (Tr. 823). Dr. Dixon found that plaintiff's ability to concentrate and maintain attention was fair (id.), and his comprehension ability "was excellent" (Tr. 824). Plaintiff's score on the multi-faceted Wechsler Memory Scale was in the borderline to high end of average range, although plaintiff demonstrated some visual memory impairment "in partial remission" (Tr. 826). Although Dr. Dixon assessed that plaintiff's ability to interact socially was affected by his being emotional, anxious and depressed, Dr. Dixon did not assign any particular functional limitations on plaintiff as a result of this conclusion and specifically opined that plaintiff "would adapt to new environmental conditions" (Tr. 827).

Based on a review of the relevant records, the Court concludes that the ALJ's finding that although some of plaintiff's doctors opined that he suffered from depression, pain disorder, personality disorder and anxiety disorder, such evidence did not establish

that any of plaintiff's mental impairments had more than a minimal effect on plaintiff's ability to work is a finding supported by substantial evidence in the record as a whole.

The ALJ reviewed the medical opinions of Drs. Michels, Daylo and Dixon specifically and noted other factors in plaintiff's treatment records (Tr. 12-14). The ALJ noted specific areas in which plaintiff's functioning was assessed to be intact as well as noting plaintiff's "intact mental status evaluations" overall, although the ALJ also noted some contradictory opinions (Tr. 14). The ALJ rated plaintiff's limitations in the areas of mental functioning, such as finding that plaintiff suffered "only mild difficulty with daily living activities and social functioning" (id.). See also 20 C.F.R. § 404.1520a(b)(2). In doing so, the ALJ discounted the finding by the non-examining Disability Determination Services ("DDS") psychologist that plaintiff had moderate limitations in maintaining social functioning "in light of the claimant's demonstrated interaction with friends and others" (Tr. 12-13, 631). In this context, the Court observes the ALJ's subsequent reference to plaintiff's report that he "couch-surfed from one friend to another" (Tr. 17, 605).

According to the Ninth Circuit, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing* Magallenes, supra, 881 F.2d at 750). "It is not the job of the court to reweigh the evidence: If the evidence is susceptible to more than one rational interpretation," including one that supports the decision of the ALJ, the ALJ's conclusion "must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (*citing* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d

595, 599 (9th Cir. 1999)); see also Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (*citing* Magallanes, supra, 881 F.2d at 750); Andrews, supra, 53 F.3d at 1039-40.

When the opinions by treating and examining physicians and psychologists are contradicted, as they were here, those opinions can be "rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31. The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ here thoroughly summarized the facts and conflicting evidence regarding plaintiff's mental impairments, stated her interpretations thereof and made findings. See id. Based on a review of the relevant evidence, as discussed above, the Court concludes that the ALJ findings here are supported by substantial evidence in the record as a whole. Lester, 81 F.3d at 830-31.

    3.    <u>The ALJ properly considered plaintiff's fatigue caused by sleep apnea</u>.

Regarding plaintiff's sleep apnea, the ALJ considered, among other things, sleep studies conducted in 2005 and 2006 (Tr. 16, *citing* Tr. 376). Although plaintiff's May, 2005 sleep study results reflected difficulties, it was recommended that a different mask be utilized "to try to improve compliance and effectiveness of BiPAP" (Tr. 391). As referenced by the ALJ, the September, 2006 study results demonstrated that "BiPAP at 14/10 was successful in normalizing apnea-hypopnea index whereas previously the apnea-hypopnea index remained abnormal" (Tr. 376). The ALJ noted that plaintiff was responding well in September, 2006 after surgery (Tr. 16, *citing* 376). The Court notes

the assessment in the treatment record that plaintiff's use "of BiPAP at 14/10 was associated with improvement in sleep architecture" (Tr. 376).

It is not for this Court to reweigh the evidence. "If the evidence is susceptible to more than one rational interpretation," including one that supports the decision of the ALJ, the ALJ's conclusion "must be upheld." Thomas, 278 F.3d at 954. According to the Ninth Circuit, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039. As the ALJ cited "substantial evidence" to support her decision in this regard, it should be upheld.

4. The ALJ evaluated properly plaintiff's credibility.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))). The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642 (*citing* Beane v. Richardson, 457 F.2d 758 (9th Cir. 1972); Wade v. Harris, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." Fair, 885 F.2d at 603.

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 722 (citation omitted).

In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); see also Reddick, 157 F.3d at 722; Smolen, 80 F.3d at1284. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific

"clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722.

Here, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements considering the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 15-16.)

The ALJ found "numerous inconsistencies" (Tr. 17). The first inconsistency noted by the ALJ was that the claimant testified he had no interaction with friends on one occasion and then later testified that he had one friend (Tr. 17). The ALJ also noted in the decision that plaintiff indicated that he was "couch-surfing" among several different friends, inferring that plaintiff had numerous friends with whom he was close enough and comfortable enough to sleep on their couches, and therefore, probably had some interaction with more than one or two friends (id.: Tr. 605). See Sample, supra, 694 F.2d at 642 (the ALJ may "draw inferences logically flowing from the evidence"). The ALJ concluded that "the evidence suggests that he has continued contact with friends to a greater extent than alleged" (Tr. 17). This factor provides some support for the ALJ's credibility determination. See Sample, 694 F.2d at 642.

The ALJ found inconsistencies between plaintiff's self-reported limitations in his abilities, in part, because plaintiff claimed that he was unable to put on shoes or socks without an assistive device, button his shirts, sit so that he did not fall over and grip implements and yet, plaintiff reported to his doctor that "he worked 2 hours a day on

computer-aided embroidery" (Tr. 17). This factor provides support for the ALJ's credibility determination.

The ALJ also noted that

> At the first hearing he said that he needed the sock-putter device for his leg. He did not mention it at the supplemental hearing, and when he was asked about it he said that he didn't need it any more. At the second hearing . . . . When asked about whether he took the utensil assistive device he claimed that he needed in his Function Report (exhibit 15F), he said that he didn't need it. When asked [about] his buttoned shirt he was wearing at the hearing, he said that he was now able to manipulate buttons.

(Tr. 17). It is not clear the extent to which these reports reflect true inconsistencies (see Plaintiff's Reply, ECF No. 15, pp. 6-9). The Court concludes that these factors provide little support for the ALJ's credibility determination.

The ALJ also found an inconsistency in plaintiff's testimony regarding his drinking (Tr. 17): "When he was asked about alcohol and its effects on his impairments, he [indicated] that when he stopped drinking there was no change in his symptoms. When his representative asked about it, he said that his symptoms had gotten worse" (id.). The ALJ earlier in the written decision found other inconsistencies in plaintiff's testimony regarding his alcohol consumption (Tr. 14). Both of these factors concerning plaintiff's testimony and reports regarding his alcohol consumption provide support for the ALJ's credibility determination.

The ALJ found an inconsistency between plaintiff's testimony at the first hearing that he read science-fiction books and his later testimony that he only read comic books (Tr. 18). The ALJ also noted that plaintiff did not disclose a certificate he received from

the police academy when asked about whether or not he had obtained any certifications after high school (id.). Both of these factors provide support for the ALJ's finding that plaintiff's testimony was not consistent and that he was not "entirely forthcoming" (id.).

The ALJ noted inconsistencies in plaintiff's reported work activity (id.). Although plaintiff had no reported earnings after 2002, he provided incomplete forms regarding some other work and self-employment from which was omitted "pertinent information such as addresses, starting and ending dates, the reason why his work stopped," etc. (id.). The ALJ found that plaintiff's "omissions suggest that he has not been entirely forthcoming about his income information" (id.). See also Sample, supra, 694 F.2d at 642 (the ALJ may "draw inferences logically flowing from the evidence"). This inference by the ALJ is supported by substantial evidence in the record as a whole.

Further discussing plaintiff's work history, the ALJ noted that plaintiff indicated that he was terminated from his job with Envisioneering "for failure to complete duties," yet told Dr. Michels that he was fired from Envisioneering "because the employer did not believe his pain and thought he was slacking off, and then that the employer changed the official reason for termination because of financial considerations," and also testified that the Envisioneering job ended "because of budget constraints" (Tr. 18). That plaintiff reported different reasons for the termination of his employment at Envisioneering provides evidence for the ALJ's credibility determination.

The ALJ found other inconsistencies between plaintiff's work history in his reports and his testimony regarding his part-time work (id.). Although he testified that he worked as a DSHS COPES caregiver from 1999-2002, "he omitted this information and

its pertinent details from his background reports" (id.). Although plaintiff "testified that the embroidery business operated from the Fall of 2002 through sometime in 2007, he operated at a loss – he paid rent to house the embroidery operation but did not default in rent until 2007" (id.). The ALJ found that it was "not reasonable to expect that a self-employed individual who is reaping no financial profit would pay rent for five years and not default in rent until the last year" (id.). This inference provides some support for the ALJ's credibility determination.

Not all of the inconsistencies noted by the ALJ are proven such that they demonstrate unequivocally that plaintiff was being less than truthful. In addition, not all of the noted inconsistencies necessarily concern important matters relevant to the decision regarding plaintiff's disability. Nevertheless, the Court concludes that the findings underlying the ALJ's failure to credit fully plaintiff's testimony are supported by substantial evidence in the record as a whole. Therefore, based on this reason and the record as a whole, the Court concludes that the ALJ here has provided clear and convincing reasons in support of her finding that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible entirely (Tr. 15-16).

## CONCLUSION

Although the ALJ evaluated properly plaintiff's mental impairments, sleep apnea and credibility, remand is appropriate to allow the administration to consider properly the opinion of treating physician Gordon Cromwell, M.D. This error was not harmless. Legal errors committed by the ALJ may be considered harmless only where the error is

irrelevant to the ultimate disability conclusion. Stout 454 F.3d at 1054-55. Since Dr. Cromwell was a treating physician who opined that plaintiff permanently suffered from limitations in his ability to function in the work place that were not included in the ALJ's determination regarding plaintiff's residual functional capacity, the ALJ's lack of consideration of Dr. Cromwell's opinion cannot be considered harmless.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for plaintiff and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on September 16, 2011, as noted in the caption.

Dated this 23rd day of August, 2011.

J. Richard Creatura
United States Magistrate Judge